UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIPLOMAT MERCHANDISE CORP., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LG.PHILIPS LCD CO., LTD.; LG.PHILIPS LCD AMERICA, INC.; SAMSUNG ELECTRONICS CO. LTD.; SHARP CORPORATION; SHARP ELECTRONICS CORPORATION; SANYO EPSON IMAGING DEVICES CORPORATION; AU OPTRONICS CORPORATION; AU OPTRONICS CORPORATION AMERICA; and Does 1 Through 100.,<br><br>Defendants. | RECEIVED<br>JAN 2 6 2007<br>U.S.D.C. S.D. N.Y.<br>CASHIERS<br><br>CIVIL ACTION NO.<br><br>**CLASS ACTION**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff Diplomat Merchandise Corp. ("Diplomat" or "Plaintiff"), by and through its attorneys, individually and on behalf of all others similarly situated, alleges as follows upon personal knowledge as to itself, and as to all other matters upon information and belief:

I.  **NATURE OF THE ACTION**

1. This action is brought as a class action on behalf of a plaintiff class (the "Class") consisting of all persons and entities who purchased Thin Film Transistor Liquid Crystal Display products ("TFT-LCD Products") in the United States, directly from one or more of the named defendants ("Defendants," identified below), or their co-conspirators, between January 1, 1998 and the present (the "Class Period"). Plaintiffs reserve the right to expand, modify or alter the class definition in response to information learned during discovery.

2.  Defendants are the leading manufacturers of TFT-LCD Products and control the majority of the LCD industry, which generates worldwide revenues in excess of $69 billion. TFT-LCD Products are incorporated into products such as televisions, mobile phones, desktop and notebook computer monitors, MP3 players, digital cameras and personal digital assistants. In recent years, TFT-LCD Products have replaced bulkier glass tubes in computer monitors and in televisions. According to the market research company DisplaySearch, manufacturers are expected to produce 48.4 million TFT-LCD Products this year for televisions alone.

3.  As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class paid artificially inflated prices for TFT-LCD Products during the Class Period. Such prices exceeded the amount they would have paid if the price for TFT-LCD Products had been determined by a competitive market. Plaintiff alleges that during the Class Period, Defendants conspired, combined and contracted to fix, raise, maintain, and/or stabilize the price at which TFT-LCD Products were sold in the United States.

## II.  JURISDICTION AND VENUE

4.  Plaintiff brings this action under §§ 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26) for treble damages and injunctive relief, as well as reasonable attorneys' fees and costs with respect to the injuries sustained by Plaintiff and the Class arising from violations by Defendants of the federal antitrust laws, including § 1 of the Sherman Antitrust Act (15 U.S.C. § 1).

5.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337(a), and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

6.  Venue and jurisdiction over defendants in this action are proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b) and (c) because Defendants

reside, transact business, and/or are found within this District, and/or a substantial part of the events giving rise to the claims arose in this District.

### III. PARTIES

**Plaintiffs**

7.  Plaintiff Diplomat Merchandise Corp. was a New York corporation which conducted a consumer electronics business in Brooklyn, New York during the Class Period. Plaintiff purchased TFT-LCD Products directly from one or more Defendants, or their co-conspirators, during the Class Period, and was damaged as a result of Defendants' unlawful conduct.

**Defendants**

8.  Defendant LG.Philips LCD Co., Ltd. ("LG.Philips") is a corporation organized under the laws of the Republic of Korea, having a principal place of business located in Seoul, South Korea. LG.Philips is a joint venture created in 1999 between LG Electronics and Philips Electronics. Upon information and belief, LG.Philips is doing business in the United States under the trade name and designation LG.Philips LCD America Inc. LG Philips maintains offices in San Jose, California. In its Form 6-K filed on December 11, 2005 with the United States Securities and Exchange Commission ("SEC"), LG Philips stated that it "is a leading manufacturer and supplier of thin-film transistor liquid crystal display (TFT-LCD) panels"; that it "manufactures TFT-LCD panels in a wide range of sizes and specifications for use in TVs, monitors, notebooks PCS, and various applications"; that it "currently operates seven fabrication facilities and four back-end assembly facilities in Korea, China and Poland." During the Class Period, LG.Philips manufactured, sold and distributed TFT-LCD Products to customers throughout the United States. LG.Philips reported $2.8 billion in revenue from the sales from LCDs in the third quarter of 2006, and is the world's second largest LCD maker by revenue.

3

9.     Defendant LG Philips LCD America Inc. ("LG Philips America") is a California corporation with a place of business at 150 East Brokaw Road, San Jose, California. During the Class Period, LG.Philips America manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

10.    Defendant Samsung Electronics Co., Ltd. ("Samsung Electronics") is a Korean corporation with a principal place of business located in Kyonggi, South Korea. During the Class Period, Samsung manufactured, sold and distributed TFT-LCD Products to customers throughout the United States. Samsung Electronics reported $3.24 billion in revenue from the sales from LCDs in the third quarter of 2006, and is the world's largest LCD maker by revenue.

11.    Defendant Sharp Corporation ("Sharp") is a business entity organized under the laws of Japan, with its principal place of business in Osaka, Japan. Sharp is Japan's largest LCD television manufacturer. During the Class Period, Sharp manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

12.    Defendant Sharp Electronics Corporation ("Sharp Electronics") is a wholly owned and controlled subsidiary of Sharp, with a principal place of business at Sharp Plaza in Mahwah, New Jersey. During the Class Period, Sharp Electronics manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

13.    Defendant Sanyo Epson Imaging Devices Corporation ("Sanyo Epson") is "a joint venture of Seiko Epson Corporation and Sanyo Electric Co., Ltd. Sanyo Epson started operations on October 1, 2004, and combines the LCD operations of Epson, Sanyo Electric, and Sanyo Group companies, Tottori Sanyo Electric Co., Ltd. and Sanyo LCD Engineering Co., Ltd. Defendant Sanyo Epson's principal place of business is located in Tokyo, Japan. During the

Class Period, Sanyo Epson manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

14. Defendant AU Optronics Corporation ("AUO") is a Taiwanese entity with its principal place of business in Hsin-chu City, Taiwan. AUO is the world's third largest TFT-LCD manufacturer, and is Taiwan's largest manufacturer of TFT-LCD Products. During the Class Period, AUO manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

15. Defendant AU Optronics Corporation America, a/k/a AU Optronics America, Inc. ("AUA"), is a subsidiary of AUO. AUA is a California corporation with a principal place of business at 1800 Wyatt Drive, Suite 7, Santa Clara, California. During the Class Period, AUA manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

16. Defendant Chi Mei Optoelectronics Corporation ("CMO") is a Taiwanese entity with its corporate headquarters in Tainan, Taiwan. CMO is "one of the world's top three suppliers of LCD panels," and calls itself the "world's leading TFT-LCD company." During the Class Period, CMO manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

17. Defendant Chi Mei Optoelectronics USA, Inc., is a wholly owned and controlled subsidiary of CMO and has its corporate headquarters at 101 Metro Drive, Suite 510, San Jose, California. During the Class Period Chi Mei Optoelectronics USA, Inc., manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

18. Various other individuals, partnerships, corporations, and other business entities, presently unknown to Plaintiff, have participated as co-conspirators with the Defendants in the

violations of law alleged herein and have performed acts and made statements in furtherance thereof.

19. The acts charged in this Complaint have been done by Defendants and their co-conspirators, or were authorized, ordered or done by their respective officers, agents, employees or representatives while actively engaged in the management of each Defendants' business or affairs.

20. Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein.

## IV. CLASS ACTION ALLEGATIONS

21. Plaintiff brings this class action on behalf of itself and on behalf of all others similarly situated. Plaintiff seeks to represent the Class, which is described as follows:

> All individuals and entities residing in the United States who, from January 1, 1998 to the present, purchased TFT-LCD Products in the United States directly from one or more of the Defendants or their subsidiaries, or their co-conspirators. Excluded from the Class are: any state, local, and federal governmental entities; any judge, justice or judicial officer presiding over this matter; any juror assigned to this action; and Defendants and their co-conspirators, along with their respective parents, subsidiaries, and/or affiliates. Also excluded from the Class are the legal representatives, heirs, successors, and attorneys of any excluded representative person or entity, and any person acting on behalf of any excluded person or entity.

22. Subject to additional information obtained through further investigation and/or discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

23. This action has been brought and may be properly maintained as a class action pursuant to pursuant Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure for the following reasons:

a. Plaintiff believes that Class members number at least in the thousands, their actual number and identity presently known only to Defendants and their co-conspirators, and that the Class members are sufficiently numerous and geographically dispersed throughout the United States so that joiner of all Class members is impracticable.

b. Plaintiff's claims are typical of the claims of the Class members, and Plaintiff will fairly and adequately protect the interest of the Class. Plaintiff purchased TFT-LCD Products directly from one or more of the Defendants or their co-conspirators, therefore, Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class;

c. Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

   i.   whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain and/or stabilize the prices of, and/or allocate the market for, TFT-LCD Products;

   ii.  whether Defendants formed and operated a combination or conspiracy to create an artificial shortage of supply in the market for TFT-LCD Products;

   iii. whether the combination or conspiracy caused TFT-LCD Products prices to be higher than they would have been in the absence of Defendants' conduct;

   iv.  the operative time period of Defendants' combination or conspiracy;

   v.   whether Defendants' conduct caused injury to the business or property of Plaintiff and the members of the Class;

   vi. the appropriate measure of the amount of damages suffered by the Class;

   vii. whether Defendants' conduct violates Section 1 of the Sherman Act; and

   viii. the appropriate nature of class-wide equitable relief.

d. After the Court's determination of the common issues identified above, if necessary or appropriate, the Class can be divided into logical and manageable subclasses;

e. Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff has no interests that are antagonistic to other members of the Class and has retained counsel competent and highly experienced in the prosecution of class actions and antitrust litigation to represent itself and the Class. The interests of the Class will be fairly and adequately protected by Plaintiff and its counsel.

f. A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer case management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

g.  The Class is ascertainable and there is a well-defined community of interest among the members of the Class.

h.  Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole; and

i.  In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

## V.  NATURE OF TRADE AND COMMERCE

24.  During the Class Period, Defendants and their co-conspirators engaged in the business of marketing and selling substantial quantities of TFT-LCD Products in a continuous and uninterrupted flow of interstate and international commerce to customers located throughout the United States.

25.  As Defendant LG.Philips states on its website, "the thin-film transistor liquid crystal display ("TFT-LCD") is a cutting-edge display, which screens picture information by adjusting the amount of light permitted." LG.Philips further states that "TFT is a circuit formed with semiconductor films on a thin glass substrate to control liquid crystals...[t]his circuit plays a vital role in controlling each pixel, the basic unit of a picture image. The color filter displays a color image by coating the pixel (red, green and blue) on a glass substrate."

26.  The market for the manufacture and sale of TFT-LCD Products is conducive to the type of collusive activity alleged here. The market is oligopolistic in nature. According to data from iSuppli, in 2005, LG.Philips had a 21.4% market share of the large TFT-LCD panel global market. Samsung had 20.9%, AUO had 14.5%, and Chi Mei Corporation had 11.8%, while the remaining suppliers controlled 31.4% of the market.

27.     The market for the manufacture and sale of TFT-LCD Products is subject to high manufacturing and technological barriers to entry. Efficient manufacturing plants are large and costly. TFT-LCD Products are also subject to technological advances, so that firms within the industry must undertake significant research and development expenses.

28.     The TFT-LCD Products industry has also been subject to significant consolidation during the Class Period, as reflected by AUO's recent acquisition of Quanta Display. The industry is also marked by a web of cross-licensing agreements that facilitate collusion. For instance, AUO entered into licensing agreements with Sharp in 2005, and with Samsung in 2006. Chi Mei Corporation has licensing agreements with Sharp, AUO, Chunghwa, HannStar, and Hitachi.

## VI.     DEFENDANTS' ILLEGAL CONDUCT

29.     On December 11, 2006, Defendant LG.Philips acknowledged that on December 8, 2006 it had received subpoenas from the United States Department of Justice, Korean Fair Trade Commission, and the Japanese Fair Trade Commission pursuant to an investigation into whether it engaged in price fixing in the LCD market. LG.Philips also acknowledged that officials from the Korean Fair Trade Commission visited its headquarters in Seoul, South Korea. The Department of Justice also served a subpoena on LG.Philips's offices in San Jose.

30.     Similarly, on December 11, 2006, Defendant Samsung acknowledged that it had received subpoenas on December 8, 2006 from the United States Department of Justice, Korean Fair Trade Commission, and the Japanese Fair Trade Commission pursuant to an investigation into whether it engaged in price fixing in the LCD market.

31. On December 12, 2006, Defendant Sharp announced that it has also been asked by the U.S. Department of Justice and Japanese Fair Trade Commission to cooperate with the investigations into LCD sales practices.

32. On December 12, 2006, Defendant AUO announced that it was also under investigation by U.S. and Japanese antitrust regulatory authorities.

33. On information and belief, Sanyo Epson is also under investigation by antitrust authorities. Japan's Federal Trade Commission has announced that it is investigating the entity, according to a December 13, 2006 Reuters wire article.

34. Speaking of the investigation into the conduct of Defendants LG.Philips and Samsung, Akinori Yamada, a director of management and planning at Japan's Fair Trade Commission, stated that "[t]he subject of the probe is price fixing." News reports have also indicated that, according to "an unnamed source at the South Korean Fair Trade Commission and the U.S. Department of Justice," the LG.Philips and Samsung probe is targeting "possible collusion in [LCD] panel prices." U.S. Department of Justice spokeswoman Gina Talamona said that the agency is "investigating the possibility of anticompetitive practices."

35. *The New York Times* reported on December 12, 2006 that the European Commission has confirmed that it has also opened a price-fixing investigation into companies that manufacture TFT-LCD Products.

36. An article published on December 15, 2006 by Bloomberg wire service states that Defendants may face the "largest antitrust penalty ever in an investigation of possible price fixing in the $69 billion industry." This same article projected that fines could exceed $1 billion.

37. Michael Min, an analyst at Korea Investment and Securities, has been quoted as saying that the investigations may be focused upon a period over the last several years when manufacturers of TFT-LCD products were charging comparable prices.

38. LCD screens were highly priced when they were first marketed, but prices have fallen considerably over the last several years. The Bloomberg article states, "Authorities are probably investigating possible price-fixing in 2004 or before, when industry profits were peaking, according to JPMorgan Chase & Co. analyst J.J. Park. Average profit margins at the three largest producers in the first half of 2004 exceeded 30 percent, compared with losses now."

39. With the growing popularity of LCD televisions, Defendants began expanding production ahead of demand. On information and belief, the zenith of the LCD production in the industry - and corresponding surplus of TFT-LCD products - occurred in or around June of 2006.

40. Anticompetitive cartel activity often occurs in markets with excess supply, and falling production costs and prices. This has been the case in the LCD market.

41. Chris Connery, an LCD industry analyst at DisplaySearch, was quoted in a June 13, 2006 article as predicting that LCD manufacturers would soon create an artificial "Crystal Cycle." A Crystal Cycle is an industry term that refers to shortages in the supply of LCDs. The article further reports that "[a]t a recent conference in Taiwan, a leading producer of LCD glass stated publicly that the industry should collectively look at cutting back on production [of LCDs] from 100 percent to 85 percent. Otherwise, if supply outpaces demand, manufacturers will be forced to cut prices." When asked if it was likely that the LCD manufacturers would actually create a Crystal Cycle artificial supply shortage, Connery replied, "the chatter is growing louder each day."

42.     A few days after the June 13, 2006 article, Defendant LG.Philips announced that it was decreasing LCD production and lowering its outlook for the second quarter of 2006, which it claimed was due to weaker than expected seasonal demand and larger than expected price declines.

43.     Defendants and their co-conspirators have engaged in a contract, combination, trust or conspiracy, the effect and purpose of which was to fix, maintain, stabilize, and/or raise the prices at which they sold TFT-LCD Products at artificially inflated levels.

## VII.    FRADULENT CONCEALMENT

44.     Defendants fraudulently concealed their participation in the conspiracy alleged herein by, *inter alia*, engaging in secret meetings and communications in furtherance of the conspiracy, and by holding themselves out as true competitors to the public, to Plaintiff, and to the Class. Because of such fraudulent concealment, Plaintiff and the Class could not have discovered the existence of this conspiracy until shortly before this class action litigation was commenced.

45.     As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VIII.    VIOLATION ALLEGED

### First Claim for Relief
### (Violation of Section 1 of the Sherman Act)

46.     Plaintiff incorporates by reference as if fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

47.     Beginning at a time presently unknown to Plaintiff, but at least as early as January 1, 1998 and continuing through the present, Defendants and their co-conspirators engaged in a

13

contract, combination, or conspiracy to fix, raise, maintain, and stabilize the price of TFT-LCD Products, in violation of Section 1 of the Sherman Act. 15 U.S.C. § 1.

48.  The combination and conspiracy alleged herein has had the following effects, among others:

   a.  Price competition in the sale of TFT-LCD Products has been restrained, suppressed, and/or eliminated in the United States;

   b.  Prices for TFT-LCD Products sold by Defendants and their co-conspirators have been fixed, raised, maintained and/or stabilized at artificially high, non-competitive levels throughout the United States; and

   c.  Those who purchased TFT-LCD Products directly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

49.  Plaintiff and Class members have been injured and will continue to be injured in their business and property by paying more for TFT-LCD Products purchased directly from the Defendants and their co-conspirators than they would have paid and will pay in the absence of the combination and conspiracy.

50.  Plaintiff and Class members are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein. If not permanently enjoined, the unlawful contract, combination, or conspiracy will continue and cause irreparable harm to Plaintiff and members of the Class, who have no adequate remedy at law.

## IX.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that:

A.  The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure;

B.  The unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be a restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in the First Claim for Relief;

C.  That Plaintiff and the Class recover damages, as provided by federal antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with such laws.

D.  That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner: (1) continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect; and (2) communicating or causing to be communicated to any other person engaged in the sale of TFT-LCD Products, information concerning bids of competitors;

E.  Plaintiff and members of the Class be awarded pre- and post-judgment interest, and that that interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

F.  Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

G.  Plaintiff and members of the Class have such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

DATED:     January 26, 2007

                    Respectfully submitted,

                    LABATON SUCHAROW & RUDOFF LLP

                    By: _____
                    Bernard Persky (BP-1072)
                    Christopher J. McDonald (CM-9874)
                    Craig L. Briskin (CB-1285)
                    100 Park Avenue
                    New York, NY 10017
                    Telephone: (212) 907-0700
                    Facsimile: (212) 818-0477

                    Mila F. Bartos
                    Richard M. Volin
                    FINKELSTEIN THOMPSON LLP
                    1050 30th Street, NW
                    Washington, DC 20007
                    (202) 337-8000
                    (202) 337-8090 (fax)

                    Marvin Miller
                    MILLER LAW LLC
                    101 N. Wacker St., Suite 2010
                    Chicago, IL 60606
                    Telephone: (312) 525-8320
                    Facsimile: (312) 525-8321

                    *Attorneys for Plaintiff Diplomat Merchandise Corp.*